The first case is United States v. Lewis. Good morning. Richard Reeve, on behalf of Anthony Lewis. I would like to briefly address the first issue that was raised and then focus, I think, largely on the second issue, which obviously is less advantageous for Mr. Lewis. As a result of the application of Section 2D1.1 of the Sentencing Guidelines, the trial judge determined that Mr. Lewis' guideline range was 360 months to life. There's really no dispute in this record that Mr. Lewis cooperated with the government and provided substantial assistance. However, the government concluded that Mr. Lewis, in his eagerness to cooperate, in effect over-cooperated with the government, embellished and exaggerated with respect to the one defendant who went to trial. All the other defendants who were made aware that they thought he lied. There is a disagreement, Your Honor, and it was our position that he did not lie. I don't think the judge made an ultimate determination that he lied. In any event, the government did not issue a 5K1. No question about that, Your Honor, and I understand that under Dillon there is a strict interpretation of that. The only argument I'm going to make now and then I'm going to let it go is that this is probably not a very legalistic argument, but in my view, if it walks like cooperation and if it talks like cooperation, it is. I'm surprised that you didn't make a different argument, a related argument, and that is the regulations speak in terms of a motion. They don't talk specifically of a 5K1 motion. The government did make a motion to withdraw the second offender, and as a result of that, the minimum guidelines, the minimum sentence was not there. I'm surprised that you didn't argue that that was a motion and that therefore, legalistically, there was authority. I would have thought that rather than making your generic, oh, this is the same thing as, and we can ignore the language, you would have focused on the fact that a motion was made. It isn't a motion that we ever talked about in any of the other cases, but that might be an argument, but you didn't make it, did you? I did not make that argument, and I adopt what Your Honor just said, and I think that makes sense. I understand. Maybe you didn't make the argument because it's not so clear that was a motion. Is it a motion or not? When you ask permission, you move, but is it a motion for those purposes? Well, I think that the government filed an 851 notice, and then they, in effect, moved to withdraw that motion. Did they, in effect, or did they actually move? I think the court is correct that I have not raised that alternative ground, and so I'm going to move on to the second issue because I think that a four-month potential reduction, if our analysis of 1B1.10 is correct, might not seem like a lot, but to someone who has been in jail since April of 2004 and who has a release date in April of 2018, four months means a lot. Every day means a lot. And I think that the critical language in this argument that the probation office overlooked, that the government overlooked, is in 1B1.10 itself. And the section indicates, and this is at page 26 of my brief, the court, the trial court, is to substitute only the amendments listed in subsection D for the corresponding guideline provisions that were applied when the defendant was sentenced. In this case, there is no question that the career offender provisions were not applied. 2D was applied. But the district court at sentencing did make reference to the career offender as well as to the cocaine guidelines, didn't they? And though you say the opposite, I think, in your brief, then later when Judge Schotteny looked at the thing, he did mention the career offender in the footnote. So it's hard for me to see how this is a case in which there was a sentence based only of the cocaine guidelines which were then lowered rather than on the other. I would answer that, Your Honor, in several ways. First of all, it's undisputed, and if you look at Judge Kravitz's ruling and the transcript, but not just that, his ruling on the first motion to reduce, he uses 2D1.1 and not the career offender guidelines to calculate the cognizable range for purposes of the first motion to reduce sentence, which then he denied in his discretion. Number two, the career offender guidelines were one level higher. They did not apply in the context of this sentencing. In effect, the career offender issue was something that I think Judge Kravitz could well have said under Rule 32, I don't have to decide this issue because it's not relevant for purposes of sentencing. And if he had said that, then your case would be a very strong one. But he didn't, I think respectfully, Your Honor, he didn't need to say that, and I think there's so many policy issues. Obviously, at the time this sentencing proceeding occurred, neither the government nor the defense had any, none of us were prescient enough to know there were going to be three motions, three reductions passed by the Sentencing Commission, and this would become an issue. But at the time of the sentencing, it really wouldn't have made sense for me to focus on the career offenders, which were not an issue. And I think if you interpret it in the way that the government suggests, then what you have is the application of a new guideline provision, which the sentencing court never really had an opportunity to litigate. There was no need to litigate that. The court is fully aware that the career offender issue has both factual and legal issues that surround it. Under this court's cases, Savage and its progeny, it's particularly applicable to Connecticut, where an Alford plea has an impact of excluding a conviction. In now. That may be so, but doesn't Section 1B110 plainly call for the court at this juncture to look to the guideline range that would have been applicable? And there's nothing in this record that suggests that the career offender guideline wouldn't have been applicable. I mean, you're asking us to simply pretend it's not there, aren't you? Or am I missing something? No, I don't think I'm pretending that. I'm saying that the guideline in 1B110 makes it very clear that you just substitute the new amendments for the provisions that were applied at the time of sentencing. That language is very, very clear. The judge did not apply the career offender guidelines in calculating the sentence in this case. And if you disregard that language, then you have a situation where the court, on the benefit of the probation office, is making a determination about an issue that was never litigated, that the parties never had an opportunity to litigate. This is the very first time in 2015, 11 years later, that all of a sudden Mr. Lewis becomes a career offender, and that provision applies. But no one's litigated the savage issues. No one's litigated the career offender. It was simply not an issue before the sentencing court in any way. And I think for that reason, if you disregard that language of what the sentencing court applied, you open up a whole new can of worms. I mean, Mr. Lewis, arguably, would he have a right now to appeal that determination after this court rules? He's never had an opportunity to appeal a potential misapplication of the guideline range. You know, there's all the departure issues that relate to career offender. There was absolutely no reason to argue Stanley or any of those issues. Noteworthy that the sentencing commission just issued a report this year where they say, no, we've got to replace the career offender guidelines. You have to have at least one crime of violence. We have, in fact, all the time people arguing that if a person has been sentenced for two crimes, for the same sentence, that one of them should fall because changes in the other might happen. That happens all the time, that people do make that appeal originally just because we know the law changes. So I think the notion that just because at the time it didn't seem to matter, it wasn't worth doing would be a rather strange one given the number of times that people raise it. Well, Your Honor, I guess what I would say is given that the career offender guidelines were higher and the judge made a determination that 2D applied, why would I create arguments to get lower from the higher range? Because things change. But we have your argument. All right. And I think – Would you like to reserve some rebuttal time? I had elected to reserve two minutes. Thank you very much. Good morning. May it please the Court. I'm Anthony Kaplan. I'm an assistant U.S. attorney in Connecticut. I actually represented the government at the initial trial and proceeding, not with respect to 3582. In the government's view, let me just address Judge Calabresi's question, which is an argument that wasn't made, but the Court asked. First of all, there was no motion made here. It was a notice of withdrawal, technically. And secondly, the application note to the guideline delineates specifically what would qualify as a motion for substantial assistance, and that's limited to 5K1.1, 3553E, and Rule 32 motion. Motion has to be something that asks for action from the Court. And this didn't. This was a unilateral withdrawal of something the government had previously introduced. Correct, Your Honor. The government filed the notice and then withdrew the notice, and so there was no action, I don't believe, by the Court in that regard. And with respect to the career offender guideline, that is, I think there was a finding in the probation report that the defendant was a career offender. There was no objection to that at the time. And the courts that have considered this issue have determined that where somebody is, in fact, a career offender and where there's a finding of a career offender and where there are reductions, it doesn't matter until the final passage. Generically, if we were to rule against you, all that would happen would be that the district court would be able to reconsider whether it would have given the same sentence with these changes. Isn't that right? That's correct. It doesn't require the district court to do that. Now, in this case, Judge Kravitz has died, very sad, but normally it would be the same district judge who did it. Shouldn't, in that setting, one try to read the law broadly to give the district court a chance to reconsider in the light of what the changes that have been made? After all, we're not saying to do anything. We're just saying, would you really have done the same thing if these guideline changes? So shouldn't we try to read those broadly? Now, we can't if we can't, but shouldn't we? Well, I guess let me answer the question first. I don't think the law provides for that to occur in this case. I understand your argument. And I think the court is looking sort of at an equitable. I think Judge Kravitz, in his initial denial, was pretty clear as to where he was going to come out on this, and Judge Schotteny adopted that. I mean, I think the way that Judge Kravitz put it is that Mr. Lewis received a significant break from the- Well, there's no doubt that Judge Kravitz gave a lower sentence because of the cooperation. I mean, that's clearly in the record. In part because of cooperation. He also looked at the defendant's age and other matters as well. Now, my point is that Judge Kravitz looked at this case in the first application, his first order, and concluded that he would have given this sentence in any event and noted that the defendant had received a substantial break from the court and the government. Judge Schotteny reiterated that in his findings. So the answer to your question is I don't think the law provides for it, and I think the defendant has had that opportunity, and Judge Kravitz and both Schotteny have taken that second step and determined that they would not have reduced the sentence. What about, more broadly, the policy argument that your adversary makes that the attention is not going to be focused on something like the career guidelines if they're not doing any work at sentencing, and that there's a potential for that non-attention to result in errors, that maybe the career guidelines assessment would have been different if that's where the adversaries were placing their attention? All I can say in that regard, Judge, is that the defendant was a career offender, was in the pre-sentence report, and there was no objection to that at any point in time. So there was an opportunity to litigate that at the time of the defendant's sentencing, and that was not, in fact, litigated. Unless the Court has any further questions, I'll rest my papers. I would like to make three brief points. The fact that there was a PSR finding does not mean that Judge Kravitz applied the career offender. That's the operative term, applied. He did not. Second, another reason not to interpret the statute, excuse me, the guideline, in the manner the government advocates is that you end up with the perverse result that for 99% of all defendants it is, in fact, a reduction, which is exactly what the Sentencing Commission wanted to do. They wanted to reduce the crack cocaine guidelines, but for Mr. Lewis and a very, very small number of people, they go up. Excuse me. Judge Kravitz was looking at this thing and gave a sentence which was significantly below the guidelines. Now, don't you think that it would be an appropriate thing for counsel, when you have a judge who is thinking that way, to say one of the reasons that a high sentence shouldn't be given, namely the career guidelines, shouldn't apply if you had any reason to object to it? The PSR says that they are there, and you're before a judge who, you know, you can tell if a judge is going to give you something that is below for some reason. Wouldn't you say, hey, look, one of the reasons for a higher sentence isn't there? So whatever it might be in another case, in this case, I would have thought that arguing the inapplicability of the career guidelines would have been quite appropriate. Well, Your Honor, I agree, except that in addition to the career offender finding, the pre-sentence report explicitly relies on 2D and not the career offender guidelines. Therefore, the career offender guidelines simply were not in play. Isn't everything in a PSR in play because it follows the defendant into the Bureau of Prisons and is relied on by the Bureau of Prisons, except to the extent corrected or objected to? I think that's true to a degree. However, having said that, I didn't think at the time, nor do I think now, that the indication that he's a career offender impacts his situation in the Bureau of Prisons. I could be wrong about that. Perhaps I should have made a pro forma objection to the career offender, which was not before the court and which was not being relied on. But the only other point that I would make is, with respect to the government's claim that Judge Kravis looked at this, that's true. But that was after the First Amendment, and the guideline range agreed to by the parties was 262 to 327. The question now is, if Judge Kravis was looking at this, he had imposed a sentence of 192 months, and now, if the court accepts my position, the guideline range is 188 to 235. He has got no variance from that guideline range for his substantial cooperation. And so I don't think we can speculate about what Judge Kravis might have done if he had had the third reduction before him. Thank you very much. Thank you both. I take the case under submission.